## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DONTE LAMAR PARKER,   :
 Plaintiff       :
          :   No. 1:23-cv-00383
 v.        :
          :   (Judge Kane)
CORRECTIONS OFFICER  :
KYPER, et al.,      :
 Defendants     :

### MEMORANDUM

Before the Court is Defendants' motion to partially dismiss Plaintiff's complaint, filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (Doc. No. 17.)  For the reasons set forth below, the Court will grant in part and deny in part the motion.

## I. BACKGROUND

Plaintiff Donte Lamar Parker ("Plaintiff"), who is proceeding pro se and in forma pauperis, is a convicted and sentenced state prisoner in the custody of the Pennsylvania Department of Corrections ("DOC").  On March 3, 2023, while he was incarcerated at State Correctional Institution Huntingdon ("SCI Huntingdon") in Huntingdon, Pennsylvania, he commenced the above-captioned action by filing a complaint pursuant to the provisions of 42 U.S.C. § 1983 ("Section 1983").  (Doc. No. 1.)  Named as Defendants are Kyper and Myers, two (2) corrections officers who work at SCI Huntington.  (Id. at 1, 2–3.)  Plaintiff asserts the following allegations against Defendants.[1]

---

[1] In accordance with the legal standard set forth below, the Court accepts these allegations as true and draws all reasonable inferences therefrom in the light most favorable to Plaintiff.  See Kedra v. Schroeter, 876 F.3d 424, 434 (3d Cir. 2017).  In addition, the Court heeds the long-standing principle that pro se documents are "to be liberally construed."  See Estelle v. Gamble, 429 U.S. 97, 106 (1976).  Thus, Plaintiff's pro se complaint, "however inartfully pleaded," will be held to "less stringent standards than formal pleadings drafted by lawyers[.]"  See Haines v. Kerner, 404 U.S. 519, 520 (1972).

On June 21, 2022, while Plaintiff was housed in the Restrictive Housing Unit at SCI Huntingdon, he informed Defendants that he wanted to go to the yard.  (Id. at 4.)  However, when the yard was called, Defendant Myers did not allow Plaintiff to go.  (Id. (claiming that Defendant Myers stated to him: "[f]uck you and your so call [sic] constitutional rights to go [to yard]").)  Although Plaintiff was ready to go to the yard, none of the corrections officers would stop at his cell door to take him.  (Id. (explaining that "everybody else" got to go to the yard).)

When the other inmates returned from the yard, Plaintiff again informed Defendants that he still wanted his time in the yard and, further, that he wanted to see a lieutenant.  (Id.)  Defendant Myers told Plaintiff that he was not going to get a lieutenant for him.  (Id.)  Plaintiff then requested a grievance form, which Defendant Kyper refused to give to Plaintiff, explaining that he would give Plaintiff "a DC-141" (i.e., a misconduct report) if Plaintiff asked for another grievance form.  (Id. (stating that Defendant Myers remarked, "why would we give you a grievance so that you could sue us . . . ").)  Undeterred, Plaintiff requested another grievance form, and he again informed Defendants that he wanted to see a lieutenant.  (Id.)  Defendant Myers stated to Plaintiff that, if he "really want[ed]" to see a lieutenant, he should "just cover up" his cell door window.  (Id.)

As a result, Plaintiff covered his cell door window.  (Id. (asserting that he did this so that he could receive a grievance and see a lieutenant).)  However, Defendant Kyper went to Plaintiff's cell door and ordered him to uncover his window, which Plaintiff refused to do until he received a grievance form and got to see a lieutenant.  (Id.)  Defendant Kyper told Plaintiff that, if he did not uncover his cell window, he would spray Plaintiff with OC spray.  (Id.)  Plaintiff informed Defendant Kyper that he has asthma and that OC spray could kill him.  (Id.)  Defendant Kyper stated, "we are not going to spray you . . . because medical informed us that the

OC spray could kill you[,] and we would need approval from the shift commander and medical anyway").)

Defendant Kyper then instructed Plaintiff to come closer to the cell door because Defendants could not hear Plaintiff.  (Id.)  In addition, Defendant Myers told Plaintiff that Defendants were going to open the "cell pie slot" so that they could see if Plaintiff was okay. (Id.)  Defendant Myers instructed Plaintiff to stand in the back of his cell for his own safety, as well as for the safety of Defendants.  (Id.)  Plaintiff complied and went to the back of his cell. (Id.)  Plaintiff's "pie slot" was opened, and Plaintiff could see Defendant Kyper looking through the slot.  (Id.)

While Plaintiff's cell window was still covered, Defendant Kyper instructed Plaintiff to turn his light on so that Defendants could see him.  (Id.)  Plaintiff refused, believing that if he "went up there[,]" Defendants would spray him with OC spray.  (Id.)  Defendant Myers explained to Plaintiff that they would not spray him with OC spray because they were ordered not to do so.  (Id.)  Defendants also told Plaintiff that, if he looked through the slot, he could see a lieutenant.  (Id.)  When Plaintiff looked through the slot, Defendant Myers stated, "here's your LT bitch[,]" and Defendant Kyper sprayed Plaintiff's face with OC spray.  (Id.)  Plaintiff started choking, so he put his head in the toilet to wash the OC spray off his face, and he passed out. (Id. (explaining that, before he passed out, he heard Defendant Myers say to Defendant Kyper, "good one bro").)

When Plaintiff passed out, he hit his head and was bleeding from his head and nose.  (Id.) When Plaintiff "came through[,]" OC spray was sprayed, again, on his face, and he hid under his bed.  (Id.)  He was then pulled out from under his bed and handcuffed.  (Id.)  Plaintiff claims that he repeatedly requested medical help from Defendants, but that he was denied treatment.  (Id.)

He was informed by Defendant Kyper that if he asked for medical help again, he would be sprayed with OC spray.  (Id.)

In connection with all of these allegations, Plaintiff asserts various Section 1983 claims. (Id. at 5.)  He asserts a First Amendment retaliation claim against Defendants on the basis that Defendant Kyper sprayed him with OC spray when he attempted to give his grievance to a lieutenant.[2]  (Id.)  Plaintiff also asserts Eighth Amendment claims against Defendants on the basis that: (1) Defendant Kyper used excessive force when he sprayed Plaintiff with OC spray; (2) Defendant Myers failed to intervene when Defendant Kyper used excessive force and failed to "render aid" after the use of such force; and (3) Defendants were deliberately indifferent to Plaintiff's serious medical needs.  (Id.)  For relief, Plaintiff seeks judgment in his favor on these claims, monetary damages, attorney's fees, interest, costs, and any other relief the Court may deem just.  (Id.)

On June 21, 2023, following some initial administrative matters (Doc. Nos. 6, 9), the Court directed the Clerk of Court to, inter alia, serve a copy of the complaint on Defendants (Doc. No. 12).  The Court also requested that, in the interest of efficient administrative judicial economy, Defendants waive service pursuant to Rule 4(d) of the Federal Rules of Civil Procedure.  (Id.)  Counsel subsequently entered an appearance on behalf of Defendants (Doc. Nos. 14, 16) and filed Defendants' waiver of service (Doc. No. 15).  Defendants then filed the instant motion to dismiss Plaintiff's complaint, along with a supporting brief.  (Doc. Nos. 17,

---

[2] These specific facts—i.e., that Plaintiff was sprayed with OC spray when he attempted to hand his grievance to a lieutenant—are not contained in the "STATEMENT OF FACTS" section of his form complaint.  (Doc. No. 1 at 4.)  Rather, they are contained in the "LEGAL CLAIM(S)" section of his form complaint.  (Id. at 5.)  However, reading his complaint as a whole, Plaintiff seems to suggest that, when he looked through the slot in his cell door to see the "lieutenant," he was attempting to hand the "lieutenant" a grievance.

18.)  Plaintiff filed an opposition brief on September 12, 2023.  (Doc. No. 19.)  Defendants have

not filed a reply, and the time period for doing so has expired.  Thus, Defendants' motion is ripe

for the Court's disposition.[3]

## II.   LEGAL STANDARD

Federal notice and pleading rules require the complaint to provide the defendant notice of

the claim and the grounds upon which it rests.  See Phillips v. County of Allegheny, 515 F.3d

224, 232 (3d Cir. 2008).  The plaintiff must present facts that, accepted as true, demonstrate a

plausible right to relief.  See Fed. R. Civ. P. 8(a).  Although Federal Rule of Civil Procedure

8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled

to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure

12(b)(6) for its "failure to state a claim upon which relief can be granted."  See Fed. R. Civ. P.

12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court accepts as true all

factual allegations in the complaint and all reasonable inferences that can be drawn from them,

viewed in the light most favorable to the plaintiff.  See Ashcroft v. Iqbal, 556 U.S. 662, 679

(2009); In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  To prevent

dismissal, all civil complaints must set out "sufficient factual matter" to show that their claims

are facially plausible.  See Iqbal, 556 U.S. at 678; Fowler v. UPMC Shadyside, 578 F.3d 203,

---

[3]  On September 12, 2023, Plaintiff filed a memorandum of law in support of his "motion for the appointment of counsel."  (Doc. No. 20.)  The Court, however, never received a motion for the appointment of counsel from Plaintiff.  As a result, an annotation was placed on the Court's docket that: "Document #20 was filed with no attached motion;" and a "[c]ourtesy copy of docket sheet [was] mailed to Donte Parker[.]"  Despite this annotation and a courtesy copy of the docket sheet being mailed to Plaintiff, he did not subsequently file a motion seeking the appointment of counsel.  Thus, the Court will not take any action on Plaintiff's memorandum of law, as it is unaccompanied by a motion.

210 (3d Cir. 2009).  The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct: "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  See Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, the United States Court of Appeals for the Third Circuit ("Third Circuit") has identified the following steps that a district court must take when reviewing a 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief."  See Santiago v. Warminster Township, 629 F.3d 121, 130 (3d Cir. 2010) (internal citations and quotation marks omitted). The Third Circuit has specified that in ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

In the context of pro se prisoner litigation, the court must be mindful that a document filed pro se is "to be liberally construed."  See Estelle v. Gamble, 429 U.S. 97, 106 (1976).  A pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can be dismissed for failure to state a claim only if it

appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.  See Haines v. Kerner, 404 U.S. 519, 520–21 (1972).

## III.   DISCUSSION

Plaintiff has filed his pro se complaint pursuant to the provisions of Section 1983. That statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

See 42 U.S.C. § 1983.  Thus, "Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States."  See Shuman v. Penn Manor School Dist., 422 F.3d 141, 146 (3d Cir. 2005) (citation omitted).  Section 1983 "does not create any new substantive rights but instead provides a remedy for the violation of a federal constitutional or statutory right."  See id. (citation omitted).

As discussed above, Plaintiff asserts various violations of his First and Eighth Amendment rights, as well as a conspiracy to violate those rights.  (Doc. No. 1.)  Defendants move for the dismissal of some of Plaintiff's Section 1983 claims, and specifically: Plaintiff's First Amendment retaliation claim against Defendants; Plaintiff's Eighth Amendment excessive use of force claim against Defendant Kyper; and Plaintiff's conspiracy claim.  (Doc. Nos. 17, 18.)  Because Defendants do not move for the dismissal of Plaintiff's Eighth Amendment failure to intervene claim against Defendant Myers or Plaintiff's Eighth Amendment deliberate indifference to serious medical needs claim against Defendants, the Court will permit Plaintiff to proceed on these claims.

7

### A.        First Amendment Retaliation Claim Against Defendants

In his complaint, Plaintiff asserts a First Amendment retaliation claim against Defendants.  (Doc. No. 1 at 5.)  To establish a prima facie case of retaliation, Plaintiff must satisfy the following three (3) elements: "(1) his conduct was constitutionally protected; (2) he suffered an adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him."  See Watson v. Rozum, 834 F.3d 417, 422 (3d Cir. 2016) (footnotes and citations omitted).  However, even if Plaintiff establishes a prima facie case of retaliation, "prison officials may still prevail if they establish that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest."  See id. (footnote, citation, and internal quotation marks omitted).

Here, Defendants concede that Plaintiff has established the first element of his prima facie case (Doc. No. 18 at 6), and the Court agrees.  The Third Circuit has held that an inmate engages in constitutionally protected activity when he requests the appropriate forms to file a grievance against prison staff.  See Watson, 834 F.3d at 422–23 (concluding that the prisoner-plaintiff had established the first element of his retaliation claim, and explaining as follows: "we cannot discern a substantive distinction between retaliation for informing prison officials of an intent to file a grievance or requesting the necessary forms to do so on the one hand, and actually filing such a grievance on the other").

Defendants also concede that Plaintiff has established the second element of his prima facie case (Doc. No. 18 at 6), and—again—the Court agrees.  The Third Circuit has explained that an adverse action is one that is "'sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights.'"  See Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001)

(quoting <u>Allah v. Seiverling</u>, 229 F.3d 220, 225 (3d Cir. 2000)).  Additionally, an adverse action "need not be great in order to be actionable[;] rather, it need only be more than de minimis."  <u>See</u> <u>Watson</u>, 834 F.3d at 423 (footnote, citation, and internal quotation marks omitted).  And, here, the act of spraying a person with OC spray is substantially more than a <u>de</u> <u>minimis</u> action or consequence.

However, Defendants dispute whether Plaintiff has established the third element of his prima facie case—that is, whether his constitutionally protected conduct of requesting grievance forms was a substantial or motivating factor in the decision to use OC spray on him.  (Doc. No. 18 at 6.)  While Defendants acknowledge that the protected conduct occurred "nearly simultaneously" with the use of OC spray, Defendants argue that Plaintiff has offered no other facts to show a causal link between the protected conduct and the adverse action.  (<u>Id.</u>)  In addition, Defendants argue that "it is clear" from Plaintiff's complaint that he was sprayed with OC spray because he covered his cell door window and refused to uncover it.  <u>See id.</u>; <u>see also</u> <u>id.</u> at 7 (citing DC-ADM 201 Use of Force policy to argue that the use of OC spray was authorized under the circumstances).)  In other words, Defendants contend that Defendant Kyper would have made the same decision to spray Plaintiff with OC spray absent Plaintiff's protected conduct.  (<u>Id.</u>)  Finally, Defendants argue that the only adverse action that Plaintiff identifies in his complaint pertains to Defendant Kyper's use of OC spray and that, therefore, Plaintiff's retaliation claim should be dismissed against Defendant Myers for failure to allege that he took any adverse action against Plaintiff.  (<u>Id.</u> at 6.)

Having reviewed the complaint, pertinent case law, and the parties' arguments,[4] the Court finds that the allegations in the complaint, accepted as true and construed in the light most favorable to Plaintiff, raise the plausible inference that Plaintiff's protected conduct was a substantial or motivating factor in Defendant Kyper's decision to use OC spray on Plaintiff. Specifically, the Court finds that the allegations show an unusually suggestive timing between Plaintiff's protected activity (i.e., requesting grievance forms) and the alleged retaliatory action (i.e., Defendant Kyper's use of OC spray).  (Doc. No. 1 at 4 (containing the complaint, wherein Plaintiff sets forth allegations that Defendant Kyper sprayed him with OC spray shortly after he made several requests for the appropriate forms to file grievances against Defendants).)

Such unusually suggestive timing is adequate to establish the third element of Plaintiff's prima facie case of retaliation.  See Dondero v. Lower Milford Twp., 5 F.4th 355, 361–62 (3d Cir. 2021) (providing that there are three (3) ways in which to establish causation, one of which is an "'an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action'" (quoting Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007))); Watson, 834 F.3d at 424 (explaining that, if the timing of the alleged retaliatory action is unusually suggestive of retaliatory motive, a causal link may be inferred between the protected conduct and the alleged retaliatory action).

In addition to Plaintiff's allegations of unusually suggestive timing between his protected conduct and the alleged retaliatory action, the Court also finds that there are allegations in Plaintiff's complaint suggesting an improper motivation on the part of Defendant Kyper when he

---

[4]  Although Plaintiff has filed a brief in opposition, he argues only very broadly that: the Court should deny Defendants' motion to dismiss because the Court must liberally construe his complaint and must consider the facts in his complaint in the light most favorable to him; or alternatively, the Court should grant him leave to file an amended complaint.  (Doc. No. 19.)

decided to spray Plaintiff with OC spray.  According to the complaint, Defendant Kyper specifically stated to Plaintiff as follows: "we are not going to spray you . . . because medical informed us that the OC spray could kill you[,] and we would need approval from the shift commander and medical anyway."  (Id.)  In addition, Defendant Kyper did not, allegedly, spray Plaintiff with OC spray until after reassuring Plaintiff that he would not be sprayed, and until after instructing Plaintiff to move towards his cell door, to turn on his cell light, and to look through the "pie slot" in his cell door.  (Id.)

Thus, while the Court recognizes Defendants' position that Defendant Kyper sprayed Plaintiff with OC spray only because Plaintiff had covered his cell door window and refused to comply with an order to uncover it (Doc. No. 18 at 6, 7), the allegations in Plaintiff's complaint contradict this argument.  As set forth above, Plaintiff asserts that Defendant Myers told Plaintiff that, if he "really want[ed]" to see a lieutenant, he should "just cover up" his cell door window. (Doc. No. 1 at 4.)  In other words, this allegation suggests that Defendant Myers prompted Plaintiff to cover his cell door in the first place.  Although Defendants may dispute the veracity of Plaintiff's allegations, the Court is required to accept them as true in resolving their Rule 12(b)(6) motion to dismiss.

Accordingly, for all of these reasons, the Court concludes that Plaintiff's complaint states a First Amendment retaliation claim upon which relief may be granted against Defendant Kyper. However, based upon the way in which Plaintiff asserts his First Amendment retaliation claim in his complaint (Doc. No. 1 at 5), the Court concludes that his complaint fails to state a First Amendment retaliation claim upon which relief can be granted against Defendant Myers.  As argued by Defendants (Doc. No. 18 at 6), the only adverse action that Plaintiff expressly identifies in his complaint is Defendant Kyper's use of OC spray.  (Doc. No. 1 at 5.)  Put

differently, Plaintiff has not identified an adverse action with respect to Defendant Myers. As a result, Plaintiff's complaint fails to establish the third element of his prima facie case against Defendant Myers. The Court will, therefore, grant in part and deny in part Defendants' motion to dismiss Plaintiff's First Amendment retaliation claim.

### B.  Eighth Amendment Excessive Use of Force Claim Against Defendant Kyper

In his complaint, Plaintiff asserts an Eighth Amendment excessive use of force claim against Defendant Kyper. (Doc. No. 1 at 5.) "The Eighth Amendment, made applicable to the States through the Fourteenth Amendment, prohibits the infliction of 'cruel and unusual punishments.'" Glossip v. Gross, 576 U.S. 863, 876 (2015). "The Supreme Court has interpreted this prohibition . . . to bar prison officials from using excessive force against inmates[.]" Young v. Martin, 801 F.3d 172, 177 (3d Cir. 2015) (citing Hudson v. McMillian, 503 U.S. 1, 6–7 (1992)). Additionally, the Supreme Court has explained that, in order to demonstrate that a prison defendant has violated the Eighth Amendment, a plaintiff must establish two (2) elements: a subjective and an objective element. See Hudson, 503 U.S. at 8. First, the plaintiff must show that the defendant acted with a "sufficiently culpable state of mind[,]" see Wilson v. Seiter, 501 U.S. 294, 297 (1991), and second, the plaintiff must show that the defendant's conduct was objectively "sufficiently serious[.]" See id. at 298.

Where a prison defendant is alleged to have used excessive force in violation of the Eighth Amendment, the pertinent inquiry for the subjective element is "whether [the] force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." See Hudson, 503 U.S. at 7; Chavarriaga v. New Jersey Dep't of Corr., 806 F.3d 210, 231 (3d Cir. 2015) (explaining that "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated[,]" and "[t]his is

true whether or not significant injury is evident").  In conducting this inquiry, there are several factors that a court must consider in determining whether a prison defendant has used excessive force against a prisoner, including: "(1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) 'the extent of injury inflicted'; (4) 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them'; and (5) 'any efforts made to temper the severity of a forceful response.'"  See Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000) (quoting Whitley v. Albers, 475 U.S. 312, 321 (1986)).

Additionally, the pertinent inquiry for the objective element is whether the prison defendant's actions were "harmful enough," see Hudson, 503 U.S. at 8, or "sufficiently serious," see Wilson, 501 U.S. at 298.  "[N]ot every malevolent touch by a prison guard gives rise to a federal cause of action."  Wilkins, 559 U.S. at 37 (citation omitted).  As a result, "[t]he Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'"  See Hudson, 503 U.S. at 9–10 (quoting Whitley, 475 U.S. at 327).  Instead, the Eighth Amendment prohibits the use of force that offends "contemporary standards of decency[,]" regardless of whether "significant injury is evident[;]" although, the extent of injury may provide "some indication of the amount of force applied" or "whether the use of force could plausibly have been thought necessary in a particular situation."  See Wilkins, 559 U.S. at 37 (citation, internal citation, and internal quotation marks omitted).

Here, the Court finds that the allegations in Plaintiff's complaint, accepted as true and construed in the light most favorable to Plaintiff, state an Eighth Amendment excessive use of

force claim upon which relief can be granted against Defendant Kyper.  Not only does Plaintiff expressly contend that Defendant Kyper acted maliciously and sadistically to cause harm when he sprayed Plaintiff with OC spray (Doc. No. 1 at 5), but Plaintiff also sets forth various factual allegations in support of this contention.

As discussed above, Defendant Kyper told Plaintiff that Defendants would not spray him with OC spray because they had been informed by medical that the use of OC spray could kill Plaintiff, and because they would need approval from the shift commander or medical in order to use such spray on Plaintiff.  (Doc. No. 1 at 4.)  Additionally, Defendant Kyper did not spray Plaintiff with OC spray until after reassuring Plaintiff that he would not be sprayed, and until after instructing Plaintiff to move towards his cell door, to turn on his cell light, and to look through the "pie slot" in his cell door.  (Id.)  Thus, while under certain circumstances a prison official's use of OC spray against a prisoner may not constitute excessive force under the Eighth Amendment, see, e.g., Jones v. Wetzel, 737 F. App'x 61, 65–66 (3d Cir. 2018) (unpublished), the Court finds that Plaintiff's allegations plausibly raise the inference that Defendant Kyper's use of OC spray was not applied in a good-faith effort to maintain or restore discipline, but rather, was applied in a malicious and sadistic way to cause harm to Plaintiff.

Although Defendants cite to Jones v. Wetzel, No. 13-cv-01400, 2017 WL 4284416, at *7–9 (M.D. Pa. Sept. 27, 2017), aff'd, 737 F. App'x 61 (3d Cir. 2018), in support of their position that Defendant Kyper's use of force was applied in a good faith attempt to restore order after Plaintiff covered his cell door window, the Court finds Defendants' reference to Jones unpersuasive.  Not only did the court address a motion for summary judgment in Jones—and, thus, had the benefit of a fully developed record—but further, the facts in Jones are

14

distinguishable, and materially so, from the factual allegations asserted, here, in Plaintiff's complaint.

In <u>Jones</u>, the undisputed record demonstrated that: the plaintiff covered his cell door and refused an order to remove the items covering his cell door; the plaintiff then refused several additional orders to remove the items; a medical defendant was contacted and approved the use of OC spray; after further discussion with a "staff negotiator" was unsuccessful, the shift commander was notified of the situation and authorized the use of force—if such force was necessary—to remove plaintiff from his cell; the plaintiff was non-compliant after an initial burst of OC spray and several additional orders and warnings were issued; plaintiff was also non-compliant after a second burst of OC spray; the plaintiff agreed to comply after a third burst of OC spray; and after the plaintiff complied, no further bursts of OC spray were utilized. <u>See</u> <u>id.</u> at *8–9.  In light of this undisputed record in <u>Jones</u>, the District Court concluded that the OC spray was used only after medical clearance and "as a measure of last resort" and that the use of OC spray was limited to an amount of force necessary to bring the plaintiff into compliance, all of which occurred while medical staff were present and consulted during the entire incident. <u>See</u> <u>id.</u> *10.

In the instant matter, however, it is not apparent from Plaintiff's complaint that, prior to Defendant Kyper's use of OC spray, Defendants sought clearance from medical or authorization from a shift commander—despite Plaintiff's allegations that they were required to do so.  It is also not apparent from Plaintiff's complaint that Defendants engaged in repeated attempts to garner Plaintiff's compliance or utilized alternative methods to avoid the use of OC spray.  Finally, there are no allegations in Plaintiff's complaint that would suggest that any individuals from medical were present to attend to Plaintiff's needs, either before, during, or after Defendant

Kyper's use of OC spray.  Thus, the Court cannot say that Defendant Kyper's use of force was applied in a good faith attempt to restore order after Plaintiff covered his cell door window.  This is especially true since Plaintiff's complaint raises the plausible inference that Defendants explained to him that they would not use OC spray on him because they had, allegedly, been informed by medical that the use of such spray could kill him.  (Doc. No. 1 at 4.)

The Court concludes that, at this stage of the litigation, such allegations are sufficient to show that Defendant Kyper acted with a "sufficiently culpable state of mind" when he sprayed Plaintiff with OC spray, see Wilson, 501 U.S. at 297, and that Defendant Kyper's use of OC spray was objectively "sufficiently serious[,]" in violation of the United States Constitution.  See id. at 298.  Accordingly, for all of these reasons, the Court concludes that Plaintiff's complaint states an Eighth Amendment excessive use of force claim upon which relief can be granted against Defendant Kyper.  The Court will, therefore, deny Defendants' motion to dismiss this claim.

### C.      Section 1983 Conspiracy Claim Against Defendants

In his complaint, Plaintiff asserts a Section 1983 claim for conspiracy to violate his Eighth Amendment rights.  (Doc. No. 1 at 5 (claiming that Defendants conspired to use excessive force on him and to deny him treatment for his serious medical needs).)[5]  "[T]o prevail on a conspiracy claim under § 1983, a plaintiff must [show] that persons acting under color of state law reached an understanding to deprive [the plaintiff] of his constitutional rights."

---

[5]  Defendants have not moved for the dismissal of Plaintiff's Eighth Amendment claim for deliberate indifference to his serious medical needs.  (Doc. Nos. 17, 18.)  As a result, it is premature for Defendants to move for the dismissal of Plaintiff's conspiracy claim as it relates to his Eighth Amendment claim for deliberate indifference to his serious medical needs.

Jutrowski v. Twp. of Riverdale, 904 F.3d 280, 293–94 (3d Cir. 2018) (citation and internal quotation marks omitted).

A conspiracy requires a showing that the conspirators "somehow reached an understanding to deny" the plaintiff his rights.  See Jutrowski, 904 F.3d at 295 (citation and internal quotation marks omitted); Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 178 (3d Cir. 2010) (recognizing that, in order "to properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred[,] and that, this "require[s] enough factual matter (taken as true) to suggest that an agreement was made, in other words, plausible grounds to infer an agreement" (citation, internal citation, and internal quotation marks omitted))).  A conspiracy also requires a showing that "one or more of the conspirators perform[ed] . . . an[ ] overt act in furtherance of the conspiracy" and that the "overt act injure[d] the plaintiff in his person or property or deprive[d] the plaintiff of any right or privilege of a citizen of the United States[.]"  See Jutrowski, 904 F.3d at 294 n.15 (quoting Barnes Found. v. Twp. of Lower Merion, 242 F.3d 151, 162 (3d Cir. 2001)).  Accordingly, a conspiracy "requires that the state actors took concerted action based on an agreement to deprive the plaintiff of his constitutional rights, and that there was an actual underlying constitutional violation of the plaintiff's rights."  See Harvard v. Cesnalis, 973 F.3d 190, 207 (3d Cir. 2020) (citation and internal quotation marks omitted).

Here, Defendants argue that the complaint fails to allege the requisite elements of a conspiracy claim under Section 1983.  (Doc. No. 18 at 10.)  Specifically, they argue that there are no allegations in the complaint which could be construed to support an agreement between Defendants or concerted action amongst them.  (Id.)  The Court, however, is unpersuaded.

Reading the complaint most favorably to Plaintiff, it can be inferred that Defendants'
actions, following Plaintiff's various requests for grievance forms, were concerted in order to
violate Plaintiff's Eighth Amendment rights.  Plaintiff's complaint sets forth allegations that
Defendants jointly denied Plaintiff's requests for grievance forms.  See, e.g., (Doc. No. 1 at 5
(alleging that Defendant Kyper refused Plaintiff's initial request for a grievance form, explaining
that he would give Plaintiff "a DC-141" (i.e., a misconduct report) if he asked for another
grievance form, and further alleging that, around this same time, Defendant Myers stated to
Plaintiff, "why would we give you a grievance so that you could sue us . . . ")).  Additionally,
Plaintiff's complaint sets forth allegations that Defendants jointly reassured Plaintiff that they
would not spray him with OC spray because medical had informed them that OC spray could kill
Plaintiff.  See, e.g., (id. (alleging that, when Plaintiff was in his cell, Defendant Kyper stated,
"we are not going to spray you . . . because medical informed us that the OC spray could kill
you[,] and we would need approval from the shift commander and medical anyway[,]" and
further alleging that Defendant Myers similarly explained to Plaintiff that Defendants would not
spray him with OC spray because they were ordered not to do so)).  Finally, while Defendant
Kyper was the only one who is alleged to have sprayed Plaintiff with OC spray, Plaintiff's
complaint sets forth allegations that both Defendants were present at Plaintiff's cell door when
this alleged wrongdoing occurred.  See, e.g., (id. claiming that, when Plaintiff looked through the
"pie slot" of his cell door and was sprayed by Defendant Kyper, both Defendants were standing
there)).

Additionally, reading the complaint most favorably to Plaintiff, it can also be inferred
that Defendants reached an agreement to violate Plaintiff's Eighth Amendment rights.  Based
upon the interactions between Defendant Kyper and Defendant Myers, which occurred in a short

period of time, the complaint raises a plausible inference that there was a "meeting of the minds"

to take the concerted action described above.  Most notably, when Plaintiff looked through the

"pie slot" of his cell door to see a lieutenant, Defendant Myers allegedly said to Plaintiff, "here's

your LT bitch[,]" and Defendant Kyper proceeded by spraying Plaintiff in the face with OC

spray.  (Id.)  In addition, after Defendant Kyper sprayed Plaintiff in the face with OC spray,

Defendant Myers said to Defendant Kyper, "good one bro."  (Id.)  Thus, the Court finds that

Plaintiff's allegations, taken together and taken as true, constitute plausible grounds to infer an

agreement between Defendants.  See Great W. Mining & Mineral Co., 615 F.3d at 178 (stating

"that in the conspiracy context, the [c]omplaint must allege enough factual matter (taken as true)

to suggest that an agreement was made, in other words, plausible grounds to infer an agreement"

(citation and internal quotation marks)).

Accordingly, because Plaintiff's complaint asserts factual allegations sufficient to raise a

right to relief above the speculative level under Twombly, the Court concludes that Plaintiff's

complaint states a conspiracy claim upon which relief may be granted against Defendants.  The

Court will, therefore, deny Defendants' motion to dismiss this claim.[6]

---

[6]  Although Plaintiff's complaint asserts only an Eighth Amendment excessive use of force claim
against Defendant Kyper, Plaintiff may still assert a conspiracy claim against both Defendants
based upon Defendant Kyper's alleged use of excessive force.  As explained by the Third
Circuit:

> The established rule is that a cause of action for civil conspiracy requires a
> separate underlying tort as a predicate for liability. Thus, one cannot sue a group
> of defendants for conspiring to engage in conduct that would not be actionable
> against an individual defendant. Instead, actionable civil conspiracy must be
> based on an existing independent wrong or tort that would constitute a valid
> cause of action if committed by one actor.  Standing alone, a conspiracy does no
> harm and engenders no tort liability.

See, e.g., In re Orthopedic Bone Screw Prod. Liab. Litig., 193 F.3d 781, 789 (3d Cir. 1999)
(emphasis added) (internal citations and quotation marks omitted); Dondero, 5 F.4th 362 n.1

### D.    Leave to Amend

Finally, the Court must determine whether Plaintiff should be granted leave to amend his complaint.  Due to the applicable liberal pleading standard, a plaintiff should generally be granted leave to amend before a Court dismisses a claim that is merely deficient.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).  The Federal Rules of Civil Procedure allow for amendments to be granted liberally in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits."  See Foman v. Davis, 371 U.S. 178, 182 (1962) (citation and internal quotation marks omitted).

However, the Court may deny leave to amend where there is "undue delay, bad faith[,] or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment[.]"  See id.  The Court may also deny leave to amend where the proposed amendment would be futile—that is, where the pleading, "as amended, would fail to state a claim upon which relief could be granted."  See In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002) (citations and internal quotation marks omitted).

In accordance with this standard, the Court cannot say that it would be futile to grant Plaintiff leave to amend his complaint in order to attempt to state a First Amendment retaliation claim against Defendant Myers.  Thus, the Court will grant Plaintiff leave to file an amended complaint.  Plaintiff is advised that the amended complaint must be complete in all respects.  It

---

(recognizing these civil conspiracy principles in the context of Section 1983); see also Hale v. Townley, 45 F.3d 914, 920 (5th Cir. 1995) (explaining that "[a] conspiracy may be charged under section 1983 as the legal mechanism through which to impose liability on all of the defendants without regard to who committed the particular act . . . " (citation omitted)).

must be a new pleading that stands by itself without reference to the original complaint or any other document already filed. The amended complaint shall set forth the claims in short, concise, and plain statements as required by Rule 8 of the Federal Rules of Civil Procedure. Neither conclusory allegations nor broad allegations will set forth a cognizable claim.

As discussed above, Plaintiff will be permitted to proceed on his First Amendment retaliation claim against Defendant Kyper, his Eighth Amendment excessive use of force claim against Defendant Kyper, his Eighth Amendment failure to intervene claim against Defendant Myers, his Eighth Amendment deliberate indifference to his serious medical needs claim against Defendants, and his claim for conspiracy to violate his Eighth Amendment rights against Defendants. Should, however, Plaintiff wish to forego the filing of an amended complaint and simply proceed to discovery on these claims, he will be permitted to file a letter on the Court's docket, stating the same.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part Defendants' motion to dismiss Plaintiff's complaint. (Doc. No. 17.) An appropriate Order follows.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania

21