IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DONTE LAMAR PARKER,** | : | |
|     **Plaintiff** | : | No. 1:23-cv-00383 |
| | : | |
|     v. | : | (Judge Kane) |
| | : | |
| **CORRECTIONS OFFICER KYPER,** | : | |
| **et al.,** | : | |
|     **Defendants** | : | |

## MEMORANDUM

Currently before the Court are Defendants' motion to dismiss this action for lack of prosecution under Rule 41(b) of the Federal Rules of Civil Procedure and motion for an extension of time to file a motion for summary judgment. For the reasons stated below, the Court will grant the motion to dismiss, deny the motion for an extension of time as moot, dismiss this action with prejudice, and direct the Clerk of Court to close this case.

**I.     BACKGROUND**

While incarcerated at Pennsylvania State Correctional Institution Camp Hill ("SCI Camp Hill"), pro se Plaintiff Donte Lamar Parker ("Parker") commenced this action by filing a complaint, which the Clerk of Court docketed on March 3, 2023. (Doc. No. 1.) Parker names as Defendants Pennsylvania State Correctional Institution Huntingdon ("SCI Huntingdon") Correctional Officers Kyper ("Kyper") and Myers ("Myers"). (Id. at 2–3.)

Parker alleges that on June 21, 2022, he was incarcerated at in the Restricted Housing Unit ("RHU") at SCI Huntingdon and "repeatedly informed" Kyper that he "would like to go to the yard." See (id. at 4). However, "soon after yard was called," correctional officers took "everybody else" but Parker to the yard. See (id.). Parker later saw Kyper and Myers, and he again requested to go to the "RHU yard." See (id.). He also told Myers, "Why are you burning

me for my yard, when its [sic] my constitutional right to go[?]" See (id.). Myers responded by stating, "Fuck you and your so call [sic] constitutional rights . . . and if you dont [sic] like it, sue me and see how that shit works out for you." See (id.).

Later, as the "RHU yard was returning," Parker again told Kyper and Myers that he wanted his "one hour yard time" and "need[ed] a [lieutenant]." See (id.). Myers refused to get a lieutenant for Parker, so Parker asked Myers for a grievance form and informed Myers that he was going to sue him. (Id.) Kyper told Parker that he would not give him a grievance form and threatened to issue Parker a misconduct if he asked again for a grievance form. (Id.) Myers also questioned why they would give Parker a grievance form if he intended to sue them and suggested that denying Parker a grievance form would prevent Parker from suing them. (Id.)

Despite Kyper and Myers's comments, Parker again requested a grievance form and asked to speak to a lieutenant. (Id.) Myers responded that if Parker "really want[ed] a [lieutenant], just cover up your window and a [lieutenant] has to come." See (id.). Parker then covered his window so he could get a grievance form and talk to a lieutenant. (Id.)

Soon thereafter, Kyper came to Parker's cell door and told him to uncover his "cell door." See (id.). Parker told Kyper that he would not uncover his door until he received a grievance form and a lieutenant came to see him. (Id.) Kyper warned Parker that if he did not uncover his door, Kyper would open the "pie slot and spray [his] ass." See (id.). Parker then told Kyper that the OC spray could kill him because he has asthma. (Id.) Kyper responded that they were not going to spray Parker "because medical informed [them] that the OC spray could kill [him] and [they] would need approval from the shift commander and medical anyway." See (id.).

2

Less than a minute later, Kyper and Myers approached Parker's cell door and told him to come closer to the door because they could not hear him. (Id.) While Parker was speaking to Myers and Kyper, Myers told Parker that he was going to open the pie slot so they could see if he was ok and directed Parker to stand at the back of his cell for their and Parker's safety. (Id.) Parker moved to the back of his cell as Myers directed. (Id.)

Parker saw the pie slot open, and he could see Kyper's face in the opening. (Id.) At this time, Parker's cell door was still covered. (Id.) Kyper told Parker to turn on the light in his cell so they could see him. (Id.) Parker told Kyper that he would not turn on his light because he thought that they would spray him once he was close to the door. (Id.) Myers ensured Parker that they were not going to spray him because "they were ordered not to," and he ordered Parker to come closer to the door. See (id.). At that point Parker approached his cell door. (Id.)

Once Parker was near his cell door, Kyper said, "[S]ee[,] we are here just to see if you are ok, and a [lieutenant] is right here[,] but you have to uncover your window in order to see him." See (id.). Myers also told Parker that if he looked through the pie slot, he could view the lieutenant outside his door. See (id.). Parker looked through the opening and asked, "Where is the [lieutenant]?" See (id.). Myers responded, "[H]ere's your [lieutenant] bitch," and Kyper sprayed Parker in the face with OC spray. See (id.).

Upon being hit with the spray, Parker "jumped back fast and started choking." See (id.). He then placed his head in his toilet to wash his face and passed out. (Id.) However, before he passed out, Parker heard Myers say, "Good one bro." See (id.).

When Parker "came through [sic]," he was sprayed again and had his cell door opened. See (id.). Parker moved under his bed because he was afraid of being assaulted. (Id.) He was then pulled out from under his bed and handcuffed. (Id.)

3

Parker was moved to a cell where he remained "for days with zero clothes on" and "no grievance." See (id.). He also alleges that his head and nose were bleeding because he hit his head when he passed out. (Id.) Parker requested medical assistance from Kyper and Myers, but they denied him treatment. (Id.) Kyper also told Parker that he would get sprayed if he asked for medical again. (Id.)

Based on these allegations, Parker asserts claims under 42 U.S.C. § 1983 against Kyper and Myers for violations of his rights under the First and Eighth Amendments to the United States Constitution. (Id. at 5). He also asserts a civil conspiracy claim. (Id.) For relief, Parker seeks compensatory and punitive damages. (Id.)

On June 21, 2023, this Court issued an Order which, inter alia, granted Parker leave to proceed in forma pauperis and directed the Clerk of Court to send copies of his complaint and waiver of service forms to Defendants. (Doc. No. 12.) Defendants waived service (Doc. No. 15) and later filed a motion to dismiss the complaint along with a supporting brief on August 18, 2023, and August 28, 2023, respectively (Doc. Nos. 17, 18). Parker filed a brief in opposition to the motion to dismiss and a motion to appoint counsel on September 12, 2023. (Doc. No. 19.) He also filed a notice indicating that his address would change from SCI Camp Hill to 620 East King Street, Apt #1, Lancaster, PA 17603 (the "Lancaster Address") as of September 20, 2023. (Doc. No. 20.)

On January 24, 2024, the Court issued a Memorandum and Order which granted Defendants' motion to dismiss to the extent that Defendants sought dismissal of Parker's First Amendment retaliation claim against Myers and denied it in all other respects. (Doc. Nos. 22, 23.) The Court also gave Parker thirty (30) days to file an amended complaint if he wanted to replead his First Amendment retaliation claim against Myers, and informed Parker that if he did

4

not file an amended complaint, his case would process on these claims: (1) his First Amendment retaliation claim against Kyper; (2) his Eighth Amendment excessive force claim against Kyper; (3) his Eighth Amendment failure to intervene claim against Myers; (4) his Eighth Amendment claim for deliberate indifference to serious medical needs against Defendants; and (5) his conspiracy claim against Defendants.  (Id. at 2.)

On February 21, 2024, the envelope containing the January 24, 2024 Memorandum and Order, which was sent to Parker at SCI Camp Hill, was returned as undeliverable.  (Doc. No. 24.)  The envelope was marked: "RTS, Released 9/30/2023, Sentence Complete."  See (id.)

On March 1, 2024, Defendants filed their answer and affirmative defenses to the complaint.  (Doc. No. 25.)  Four (4) days later, the Court issued an Order directing Parker to show cause why this action should not be dismissed for lack of prosecution under Rule 41(b) of the Federal Rules of Civil Procedure.  (Doc. No. 26.)  The following day, Defendants filed an amended certificate of service in which they indicated they served a copy of their answer upon Parker at the Lancaster Address.  (Doc. No. 27.)

Based on Defendants' certificate of service, the Court issued an Order on March 7, 2024, which, inter alia: (1) directed the Clerk of Court to update Parker's address to the Lancaster Address and mail copies of the January 24, 2024 Memorandum and Order to Parker at the Lancaster Address; (2) provided Parker with thirty (30) days to file an amended complaint; (3) informed Parker that if he did not timely file an amended complaint, the case would proceed on the remaining claims against Defendants in his original complaint; (4) vacated the prior Order to Show Cause; and (5) struck Defendants' answer and affirmative defenses pending Parker's decision whether to file an amended complaint.  (Doc. No. 28.)  This Order was mailed to Parker

5

at the Lancaster Address, but it was returned to the Clerk of Court as undeliverable on March 28, 2024. (Doc. No. 30.)

On June 14, 2024, Defendants refiled their answer and affirmative defenses to Parker's original complaint. (Doc. No. 32.) On November 26, 2024, another envelope containing the Court's March 7, 2024 Order, which was mailed to Parker at the Lancaster Address, was returned as undeliverable. (Doc. No. 33.)

Defendants filed the instant motions to dismiss for lack of prosecution and for an extension of time to file a motion for summary judgment on January 6, 2025. (Doc. Nos. 34, 35.) Defendants filed a brief in support of their motion to dismiss on January 21, 2025. (Doc. No. 36.) To date, Parker has not filed a response to Defendants' motion or updated his address with the Clerk of Court.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 41(b) allows for the dismissal of an action for failure of a plaintiff "to prosecute or to comply with these rules or a court order[.]" See Fed. R. Civ. P. 41(b). District courts also have the inherent power to dismiss an action sua sponte for failure to prosecute. See Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991); see also R & C Oilfield Servs. LLC v. Am. Wind Transp. Grp. LLC, 45 F.4th 655, 661 (3d Cir. 2022) (stating that "[c]ourts possess inherent power to manage their own affairs so as to achieve the orderly and expeditious disposition of cases" and that "[t]his includes the authority to dismiss a case for lack of prosecution" (citation, internal citation, and internal quotation marks omitted)).

When determining whether to dismiss an action with prejudice for a plaintiff's failure to prosecute under Rule 41(b), the Court considers and balances the following six (6) factors set

6

forth by the Third Circuit Court of Appeals in Poulis v. State Farm Fire and Casualty Company, 747 F.2d 863 (3d Cir. 1984):

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

See id. at 868–70; see also Spain v. Gallegos, 26 F.3d 439, 454–55 (3d Cir. 1994) ("Ordinarily, when a court is determining sua sponte or upon motion of a defendant whether to dismiss because of a plaintiff's failure to prosecute" the court must consider the Poulis factors).[1]

---

[1] In a nonprecedential opinion, the Third Circuit Court of Appeals explained that even though district courts should ordinarily apply Poulis when considering whether to dismiss an action with prejudice for failure to prosecute, "when a litigant's conduct makes adjudication of the case impossible, such balancing under Poulis is unnecessary." See McLaren v. N.J. Dep't of Educ., 462 F. App'x 148, 149 (3d Cir. 2012) (unpublished) (citing Guyer v. Beard, 907 F.2d 1424, 1429–30 (3d Cir. 1990) and Spain, 26 F.3d at 454–55). The Third Circuit identified a plaintiff's failure to provide the court with an up-to-date address as an example of a litigant's conduct making a case impossible to adjudicate. See id. In these circumstances,

> although courts are normally required to consider whether a lesser sanction would be appropriate (when applying Poulis), "[t]he district court could not contact [the plaintiff] to threaten [them] with some lesser sanction. An order to show cause why dismissal was not warranted or an order imposing sanctions would only find itself taking a round trip tour through the United States mail."

See id. (quoting Carey v. King, 856 F.2d 1439, 1441 (9th Cir. 1988)) (alterations in original). Following this reasoning, the Third Circuit concluded that it was not an abuse of discretion for a district court to dismiss a "case as a sanction for [the plaintiff's] failure to provide the Court with an accurate mailing address." See id.

Several district courts have adopted the Third Circuit's reasoning and dismissed actions with and without prejudice for failure to prosecute without considering Poulis where the plaintiff failed to update their address. See, e.g., Patel v. Benjamin, No. 23-cv-00972, 2023 WL 11983380, at *2 (M.D. Pa. Nov. 2, 2023) (explaining that because of "the plaintiff's failure to provide the court with an appropriate current address . . ., neither the court nor the defendant has any way to communicate with the plaintiff making it impossible to move this litigation forward" and determining that dismissal of the action without prejudice was warranted "because the plaintiff abandoned her affirmative obligation of updating the court as to her address" (citing Capozzi v.

7

However, no single factor is dispositive, and not all factors must be satisfied for the Court to dismiss an action.  See Mindek v. Rigatti, 964 F.2d 1369, 1373 (3d Cir. 1992); Briscoe v. Klaus, 538 F.3d 252, 263 (3d Cir. 2008) (stating that "we have also made it clear that 'not all of the Poulis factors need be satisfied in order to dismiss a complaint'" (quoting Mindek, 964 F.2d at 1373)).  Nevertheless, because "'dismissals with prejudice . . . are drastic sanctions' . . . it is imperative that the District Court have a full understanding of the surrounding facts and circumstances pertinent to the Poulis factors before it undertakes its analysis."  See Briscoe, 538 F.3d at 258 (quoting Poulis, 747 F.2d at 867–68).

## III.   DISCUSSION

Defendants contend that the Court should dismiss this action with prejudice because Parker has failed to prosecute this case.  (Doc. No. 36 at 5–15.)  To determine whether dismissal is appropriate here, the Court will consider each of the Poulis factors.

---

Catering By Marlins, Inc., No. 17-cv-02413, 2021 WL 5504753, at *1–2 (M.D. Pa. Oct. 20, 2021), report and recommendation adopted, 2021 WL 5494317 (M.D. Pa. Nov. 23, 2021)); Welch v. City of Philadelphia, No. 11-cv-04670, 2012 WL 1946831, at *4 (E.D. Pa. May 30, 2012) (dismissing action with prejudice for lack of prosecution and explaining that "when neither the Court nor opposing counsel can reach the plaintiff because he has not furnished an up-to-date address . . ., and when plaintiff has not responded to his opponents' allegations regarding his failure-to-prosecute . . ., we have no choice but to act on the information before us; Plaintiff has, in essence, made adjudication of the case impossible.").  Here, even if this line of reasoning was persuasive, the Court would consider the Poulis factors before granting Defendants' motion because of the possible application of the statute of limitations if Parker were to try to refile this case.  See, e.g., Hernandez v. Palakovich, 293 F. App'x 890, 894 n.8 (3d Cir. 2008) (unpublished) (explaining that district courts must apply Poulis where "a pro se litigant's right to bring suit may well be irretrievably lost if the dismissal stands"); Davis v. Giorla, No. 14-cv-6629, 2016 WL 6905387, at *1 (E.D. Pa. Nov. 22, 2016) (explaining that balancing Poulis factors was needed because any dismissal would be with prejudice due to statute of limitations bar).

A. **The Party's Personal Responsibility**

The first factor is the extent of the party's personal responsibility. Here, Parker is personally responsible for his failure to prosecute. He is prosecuting this matter in a pro se capacity and has no one else to blame for his failure to act in this case. See Briscoe, 538 F.3d at 258–59 ("[I]t is logical to hold a pro se plaintiff personally responsible for delays in [their] case because a pro se plaintiff is solely responsible for the progress of [their] case . . . ."); see also Clarke v. Nicholson, 153 F. App'x 69, 73 (3d Cir. 2005) (unpublished) ("[U]nlike a situation where dismissal is predicated upon an attorney's error, the plaintiff here was pro se and directly responsible for her actions and inaction in the litigation."). In addition, upon filing his complaint in this case, Parker received notice of his obligation to update his address and the possibility that this case could be dismissed if he failed to do so:

> ***Change-of-address notice***. Local Rule of Court 83.18 requires pro se plaintiffs to keep the court informed of their current address. If your address changes while your lawsuit is being litigated, you must immediately inform the court of the change in writing. By signing and submitting the complaint form, you agree to provide the Clerk's Office with any changes to your address where case-related papers may be served, and you acknowledge that your failure to keep a current address on file with the Clerk's Office may result in dismissal of your case.

See (Doc. No. 5-2 at 3–4).[2] Therefore, since Parker is personally responsible for failing to prosecute this case, agreed to update his address with the Clerk of Court, and had notice that he

---

[2] Local Rule 83.18 states in pertinent part as follows:

> Whenever a party by whom or on whose behalf an initial paper is offered for filing is not represented in the action, such party shall maintain on file with the clerk a current address at which all notices and copies of pleadings, motions or papers in the action may be served upon such party.

See M.D. Pa. L.R. 83.18.

9

risked dismissal of this case if he failed to update his address, this first factor weighs heavily in favor of dismissal.[3]

### B.     Extent of Prejudice to the Defendants

The second factor is the extent of prejudice to Defendants caused by Parker's failure to prosecute.  "Generally, prejudice includes the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party."  Briscoe, 538 F.3d at 259 (citation and internal quotation marks omitted).  Prejudice, however, "is not limited to irremediable or irreparable harm.  It also includes the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy."  See id. (citations and internal quotation marks omitted).  For instance, prejudice can "include the burden that a party must bear when forced to file motions in response to the strategic discovery tactics of an adversary[.]"  See Ware v. Rodale Press, Inc., 322 F.3d 218, 223 (3d Cir. 2003) (citation omitted); see also Poulis, 747 F.2d at 868 (concluding that the district court's finding of prejudice to the defendant was "supported by the record" where "[t]he interrogatories were never answered nor were objections filed[, and] defense counsel was obliged to file a motion to compel answers, and was obliged to file its pretrial statement without the opportunity to review plaintiffs' pretrial statement which was due to be filed first").

Here, Defendants are prejudiced by Parker's failure to update his address because it makes "it impossible for [them] to proceed with this case."  See Dorsey v. Marsh, No. 23-cv-01390, 2023 WL 8259259, at *1 (M.D. Pa. Nov. 29, 2023).  Thus, the second factor weighs in favor of dismissal.

---

[3]  The court notes that although Parker was incarcerated at the time he commenced this lawsuit, all of his failures to comply with court orders and other litigation responsibilities have occurred once he was released from prison and free from the restrictions accompanying incarceration.

### C.     The Plaintiff's History of Dilatoriness

The third factor is whether Parker has a history of dilatoriness.  A court can find a pattern of dilatoriness where there has been "extensive or repeated delay or delinquency . . . such as consistent non-response to interrogatories, or consistent tardiness in complying with court orders."  See Adams v. Trustees of N.J. Brewery Emps.' Pension Trust Fund, 29 F.3d 863, 873–74 (3d Cir. 1994).  Here, Parker has not taken any action in this case since filing his notice of change of address on September 12, 2023.  As such, Parker has demonstrated a history of dilatoriness, which weighs in favor of dismissal.

### D.     Whether the Plaintiff's Conduct Was Willful or in Bad Faith

The fourth factor is whether Parker's conduct was willful or in bad faith.  In evaluating this factor, the Court must determine whether the conduct at issue reflects mere inadvertence or negligence, or conversely, whether it is "the type of willful or contumacious behavior which [can be] characterized as 'flagrant bad faith.'"  See Scarborough v. Eubanks, 747 F.2d 871, 875 (3d Cir. 1984) (citing Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639, 643 (1976)).  There is nothing in the record to indicate that Parker's continuing failure to update his address constitutes mere inadvertence or negligence, but the Court cannot similarly ascertain whether this conduct demonstrates flagrant bad faith.  Parker has been "silent, and . . . silence is ambiguous."  See El-Hewie v. Paterson Pub. Sch. Dist., No. 13-cv-5820, 2015 WL 5306255, at *4 (D.N.J. Sept. 10, 2015).  As such, the Court finds that this factor is neutral.

### E.     The Effectiveness of Sanctions Other Than Dismissal

The fifth factor is the effectiveness of sanctions other than dismissal.  "[S]anctions less than dismissal [are] ineffective when a litigant . . . is proceeding pro se and in forma pauperis."  Lopez v. Cousins, 435 F. App'x 113, 116 (3d Cir. 2011) (unpublished); see also Briscoe, 538

F.3d at 262–63 ("[W]here a plaintiff is proceeding pro se, and moreover, is proceeding in forma pauperis, we have upheld the District Court's conclusion that no alternative sanctions existed because monetary sanctions, including attorney's fees, 'would not be an effective alternative.'" (quoting Emerson v. Thiel Coll., 296 F.3d 184, 191 (3d Cir. 2002))). Here, Parker is proceeding in forma pauperis, so the threat of monetary compliance (including fines, costs, or payment of attorney's fees) is unlikely to prompt compliance. Therefore, this factor weighs in favor of dismissal.

### F. The Meritoriousness of the Claim(s)

The sixth and final factor is the meritoriousness of Parker's claims in his complaint. When evaluating this factor, courts must apply the Rule 12(b)(6) standard for addressing motions to dismiss. Here, while Defendants argue in their brief that Parker's claims lack merit, see (Doc. No. 36 at 7–15), the Court has already denied Defendants' motion to dismiss Parker's (1) First Amendment retaliation claim against Kyper, (2) Eighth Amendment excessive force claim against Kyper, (3) Eighth Amendment failure to intervene claim against Myers, (4) Eighth Amendment claim for deliberate indifference to serious medical needs against Defendants, and (5) his conspiracy claim against Defendants. (Doc. Nos. 22, 23.) Thus, this factor weighs against dismissal.

### G. Balancing the Factors

The Court must now balance the Poulis factors. When balancing these factors, there is no "magic formula" or mathematical calculation used to direct a particular result. See Briscoe, 538 F.3d at 263. Also, as stated above, "no single Poulis factor is dispositive," and that "not all of the Poulis factors need be satisfied in order to dismiss a complaint." See Ware, 322 F.3d at 222; Mindek, 964 F.2d at 1373. In balancing the factors here, the Court is mindful that dismissal "is

only appropriate in limited circumstances and doubts should be resolved in favor of reaching a decision on the merits." See Liggon-Reading v. Est. of Sugarman, 659 F.3d 258, 260 n.1 (3d Cir. 2011) (citations omitted).

In this case, the first, second, third, and fifth factors weigh heavily in favor of dismissal. The fourth factor is neutral, and the only factor weighing against dismissal is the sixth factor. Although the Court recognizes that Parker has alleged claims with possible merit, there are simply no alternative sanctions that would adequately punish Parker, and the case cannot proceed without his participation and an address to which Defendants and the Court can communicate with him. Since at least mid-September 2023, which is more than two (2) years ago, Parker has not shown any intent to continue prosecuting this case. Therefore, the Court finds that upon balancing the Poulis factors, dismissal with prejudice is warranted and appropriate in this case.

## IV. CONCLUSION

For the reasons stated above, the Court will grant Defendants' motion to dismiss this action for lack of prosecution and will dismiss it with prejudice. The Court will also deny as moot Defendants' motion for an extension of time to file a motion for summary judgment. An appropriate Order follows.

s/ Yvette Kane<br>
Yvette Kane, District Judge<br>
United States District Court<br>
Middle District of Pennsylvania